UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLADYS ANN SOLLEVELD, | )<br>) No. 12 CV 10193 |
| Plaintiff, | )<br>) |
| v. | ) Magistrate Judge Young B. Kim<br>) |
| CAROLYN W. COLVIN, Acting<br>Commissioner, Social Security<br>Administration,[1] | )<br>)<br>)<br>) |
| | ) August 20, 2014 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Gladys Solleveld seeks disability insurance benefits ("DIB"), *see* 42 U.S.C. §§ 416(i), 423, claiming that she is disabled as a result of a herniated disc and asthma. After the Commissioner of the Social Security Administration denied her application, Solleveld filed this suit seeking judicial review. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment. Solleveld's motion is granted to the extent that the case is remanded for further proceedings and the Commissioner's motion is denied for the following reasons:

**Procedural History**

Solleveld applied for DIB on November 12, 2009, claiming she was disabled as of July 18, 2008, because of a herniated disc and a history of asthma. (See Administrative Record ("A.R.") 39, 108-09.) After the Commissioner denied her

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin—who became the Acting Commissioner of Social Security on February 14, 2013—is automatically substituted as the named defendant.

claim initially and upon reconsideration, (id. at 55, 61), Solleveld sought and was granted a hearing before an administrative law judge ("ALJ"), (id. at 67, 77). A hearing was held on June 1, 2011, at which Solleveld, her father Don Billings, and a vocational expert ("VE") provided testimony. (Id. at 11-36.) The ALJ issued a decision finding that Solleveld is not disabled within the meaning of the Social Security Act and denying her DIB claim. (Id. at 39-50.) When the Appeals Council denied Solleveld's request for review, (id. at 1-6), the ALJ's denial of benefits became the final decision of the Commissioner, *see O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). On December 20, 2012, Solleveld filed the current suit seeking judicial review of the Commissioner's decision. *See* 42 U.S.C. § 405(g); (R. 1, Compl.). The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c); (R. 9).

**Facts**

Solleveld, who is 49 years old, has suffered from back pain since March 2007 and has had asthma since childhood. She held various retail jobs before applying for DIB and last worked in a sandwich shop for about a month in 2009. Solleveld claims that her back pain and asthma became disabling on July 18, 2008. She presented both documentary and testimonial evidence in support of her claim.

**A.    Medical Evidence**

From December 2006 through October 2010, Dr. Michael Harney, D.O., treated Solleveld for her back conditions and asthma. His notes indicate that in December 2006 Solleveld pulled a muscle in her back, and in March 2007 she

2

experienced back pain and acute muscle spasms after jumping on a trampoline. (A.R. 252-53.) In November 2009, Solleveld went to the emergency room complaining of back pain radiating down her left leg. (Id. at 217.) Shortly thereafter, Dr. Harney diagnosed Solleveld with lumbar pain and neuritis and ordered an MRI. (Id. at 222.) The MRI showed mild disc bulging at L2-L3 and L3-L4, as well as mild right neuroforaminal narrowing at L3-L4 "due to lateral disc bulging and endplate spurring." (Id. at 225.) The radiological report impressions included "moderate left neuroforaminal stenosis at L4-L5 due to a foraminal protrusion" and "mild lumbar spondylosis." (Id. at 225, 227.)

Throughout roughly four years of treating Solleveld, Dr. Harney performed numerous back manipulations, (see, e.g., id. at 239-42, 244, 247, 285, 304), noted her use of a cane on several occasions, (id. at 241, 243, 245-46, 250-51), and prescribed Vicodin, Norco, Flexeril, and other pain medications as often as once every one or two weeks, (see, e.g., id. at 238-44, 247-52). He also prescribed Symbicort and Singulair for Solleveld's asthma. (Id. at 244-45, 249, 253.)

In January 2010, state agency medical consultant Dr. Henry Rohs conducted a physical residual functional capacity ("RFC") assessment of Solleveld in connection with her application for DIB. (Id. at 261-68.) Based on his review of her medical records, Dr. Rohs concluded that Solleveld could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for six hours a day, sit about six hours a day, and perform unlimited pushing and pulling. (Id. at 262.) He opined that she could occasionally climb ladders, ropes, and scaffolds, but should avoid concentrated

exposure to fumes, odors, dusts, gases, and poor ventilation because of her asthma. (Id. at 263, 265.) Dr. Rohs found no evidence of manipulative, visual, or communicative limitations. (Id. at 264-65.) He noted that an MRI and x-rays indicated moderate left neuroforaminal stenosis and mild lumbar spondylosis. (Id. at 268.) He then concluded that Solleveld's statements were "fully credible." (Id.)

In September 2010, consultant Dr. David Mack completed an Illinois Request for Medical Advice form reviewing Dr. Rohs's RFC assessment. (Id. at 293-95.) After summarizing Solleveld's allegations of asthma and back pain, he noted that Dr. Rohs initially found Solleveld capable of light work based on imaging data showing stenosis. (Id. at 295.) Dr. Mack also made reference to an unsigned July 2010 form in which Dr. Harney wrote that Solleveld had tenderness of the sacroiliac joint, but no gait or posture abnormalities, weakness, sensory changes, or reflex changes. (Id. at 273, 295.) Dr. Mack ultimately affirmed Dr. Rohs's previous RFC assessment, but concluded that Solleveld's claims were only "partially credible" because although x-ray evidence supported some of her claimed limitations, clinical findings were "minimal." (Id. at 295.)

In October 2010, Dr. Harney wrote a letter stating that because of her back pain, Solleveld is "limited in her ability to sit, stand, walk, sleep and to perform all activities of daily living." (Id. at 305.) He noted that she is "in a constant state of fatigue" and has trouble maintaining focus and concentration because of her difficulty sleeping and side effects from her medication. (Id.) Dr. Harney concluded

4

that Solleveld has been unable to work in any capacity since July 2008, and that her disability would "continue indefinitely." (Id.)

Dr. Harney retired soon thereafter and Dr. Mark McVay, D.O., took over Solleveld's treatment. (Id. at 312.) In notes from March and April 2011, Dr. McVay reported that he reviewed Dr. Harney's records and upon examining Solleveld, found symptoms consistent with spondylosis and kyphoscoliosis. (Id. at 312, 314.) He observed that she had a normal gait, but complained of fatigue and problems sleeping. (Id. at 312.) He recommended a spine x-ray and MRI to assess the progression of her spondylosis and disc protrusion, but noted that Solleveld could not afford those tests. (Id. at 313.) Over the course of treatment, Dr. McVay prescribed Flexeril and Norco for Solleveld's back pain, Symbicort for her asthma, and a variety of other medications. (Id. at 314.)

Solleveld went to the emergency room twice during the last week of April 2011. (Id. at 306, 308.) Both times she complained of back pain, and during the second visit she said she tried to get medication at a pharmacy but was told that public aid would not cover her prescription. (Id. at 308-09.) Solleveld was discharged after the second visit with a prescription for pain medication. (Id.)

In May 2011, Dr. McVay wrote a letter explaining that Solleveld has kyphoscoliosis and lumbar spondylosis, and that her back conditions cause "severe pain on a daily basis." (Id. at 317.) He opined that she is "unable to work at any job due to this pain" and has difficulty with activities of daily living. (Id.) He concluded that her conditions are progressive and permanent, "further debilitation of

5

functional capacities is expected," and that the only treatment for her conditions is pain management. (Id.)[2]

**B.   Solleveld's Testimony**

During the hearing in June 2011, Solleveld described her past work history and the limiting effects of her back conditions. She testified that she worked at a PetSmart Distribution Center in 2007 and 2008 as a product stocker, but was fired after taking too much time off because of her back pain. (A.R. 16.) She also worked at a sandwich store in 2009, but quit after a month because she had to take breaks every five to ten minutes. (Id. at 15-16.) She said that she can no longer work because of the pain and because her medication makes her constantly tired and unable to concentrate. (Id.) Solleveld further testified that she is "always in pain" and that it radiates from her lower back down through her left leg. (Id. at 19.) She rated her pain on a scale from one to ten as "about an eight," which she said is typical for her. (Id.) When asked why she went to the emergency room in April 2011, Solleveld responded that she was trying to fold blankets when her "disc started bulging" and "hitting [her] sciatic nerve." (Id. at 24.) She noted that a similar incident happened in November 2009 which also required her to go to the emergency room. (Id. at 21.)

---

[2] The record also includes a July 2011 physical RFC assessment form completed by Dr. McVay. (Id. at 320-26.) But absent the requisite showings under 42 U.S.C. § 405(g), which Solleveld made no attempt to make, the court cannot review Dr. McVay's post-decision opinion in deciding whether the ALJ's reasoning was supported by the record as a whole. *See* 42 U.S.C. § 405(g) (requiring that claimant show additional evidence is new and material, and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"); *Eads v. Sec'y of the Dept. of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).

6

With respect to daily activities, Solleveld testified that her father cooks meals for her and that she lives in a trailer. (Id. at 17.) She said that she can only walk about a block, which is the distance to her father's house, before she needs to sit down. (Id. at 20.) Her sister cleans her trailer and does her laundry. (Id. at 17.) Her father and sister grocery shop for her, but sometimes she goes with them to the store and uses a motorized cart to get around. (Id. at 20.) Solleveld said she had a driver's license in 1997, but that she lost her license after driving under the influence and has not had one since. (Id. at 17.) She explained that she cannot drive anyway with the amount of medication she is taking. (Id.) Her father, who was also present at the hearing, testified that he drives her to all of her appointments when she is not staying with her sister. (Id. at 24.)

Solleveld said that she gets four hours of solid sleep on a good night, but that such nights are infrequent because her back pain makes her toss and turn. (Id. at 22.) She naps during the day and spends "about 90 percent" of the day either sleeping or lying down and resting. (Id.) She said that she has trouble concentrating and often cannot focus on one thing for too long. (Id.) Her father testified that he also noticed she has trouble concentrating. (Id. at 25.) He estimated that she spends at least half of her day sleeping or resting. (Id. at 26.)

C.  **Vocational Expert's Testimony**

Vocational Expert Randall Harding testified regarding the kinds of jobs someone with certain hypothetical limitations could perform. (A.R. 30-36.) The VE first confirmed that Solleveld's previous retail jobs were performed at an unskilled

7

medium exertion level, light exertion level, and semiskilled light exertion level. (Id. at 31.) The ALJ then asked the VE about a hypothetical individual of Solleveld's age, education, and work experience who was limited to light work, could occasionally climb ladders, ropes, or scaffolds, and would need to avoid concentrated exposure to fumes, odors, gases, and poor ventilation. (Id.) The VE responded that such an individual would not be able to work at Solleveld's previous jobs, but could work as a folding machine operator, mail machine operator, collator, or ticket seller. (Id. at 32.)

The ALJ next asked about a hypothetical individual who was limited to light work and could frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. (Id.) This individual could also frequently balance, stoop, kneel, crouch, and crawl, but would need to avoid all exposure to extreme cold and heat, wetness, humidity, fumes, odors, gases, and poor ventilation. (Id.) The VE testified that these limitations would probably reduce the number of available ticket seller positions by at least 50 percent, but that the other jobs he previously mentioned would not be affected. (Id. at 33.)

The ALJ proceeded to ask about further limitations such as reducing work to the sedentary level of exertion, (id.), needing an assistive device, (id. at 33-34), and having to change positions from sitting to standing for brief periods, (id. at 34). The VE indicated that jobs would still exist for an individual with each of the described limitations. (Id. at 33-34.) The ALJ concluded her questioning by asking about customary tolerances for unexcused absences. (Id. at 35.) The VE testified that

usually employers allow one to two absences in the first month or two and a few short breaks throughout the day, but needing to exceed these limits would eliminate competitive employment. (Id.) Then Solleveld's attorney asked the VE about an individual who could not stay on task "up to 80 percent of an eight-hour workday." (Id.) The VE responded that such an individual also would be unemployable. (Id. at 36.)

**D.     The ALJ's Decision**

The ALJ concluded that Solleveld is not disabled under §§ 216(i) and 223(d) of the Social Security Act. (A.R. 50.) In applying the standard five-step sequence for assessing disability, *see Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012), the ALJ determined at steps one and two of the analysis that Solleveld has not engaged in substantial gainful activity since July 18, 2008, and that her asthma, scoliosis, and degenerative disc disease constitute severe impairments. (A.R. 45.) At step three the ALJ found that Solleveld's impairments neither meet nor medically equal any of the listings in 20 C.F.R. 404, Subpart P, Appendix 1. (Id. at 46.) Proceeding to steps four and five of the analysis, the ALJ concluded that Solleveld has the RFC to perform light work, except that she can frequently climb ramps and stairs but can never climb ladders, ropes, or scaffolds. (Id.) The ALJ also found that Solleveld can frequently balance, stoop, kneel, crouch, and crawl, but must avoid all exposure to extreme cold and heat, wetness, humidity, fumes, odors, gases, and dust. (Id.) The ALJ determined that Solleveld is unable to return to her previous work, but that she can perform other jobs that exist in the national economy. (Id. at 48-50.)

Accordingly, the ALJ concluded that Solleveld is not disabled and denied her application for benefits.

## Analysis

In moving for summary judgment, Solleveld argues that the ALJ committed reversible errors in assessing her credibility and determining her RFC. This court's role is limited to determining whether the ALJ's decision is supported by substantial evidence and free of legal error. *See Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard requires the ALJ to build a logical bridge between the evidence and her conclusion, but not necessarily to provide a comprehensive written evaluation of every piece of evidence in the record. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). In asking whether the ALJ's decision has adequate support, this court will not reweigh the evidence or substitute its own judgment for the ALJ's. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

### A. Credibility Analysis

Solleveld argues that the ALJ improperly assessed her credibility. (See R. 17, Pl.'s Mem. at 10-12.) In challenging the ALJ's credibility determination, Solleveld has a particularly high burden to meet because this court may only overturn an ALJ's credibility assessment if it is "patently wrong." *See Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004). Because the "ALJ is in the best position to

determine a witness's truthfulness," this court will "affirm a credibility determination as long as the ALJ gives specific reasons" supported by the record for her finding. *See id.* However, where the credibility determination is based on objective factors rather than subjective considerations, an ALJ is in no better position than the court and so the court has greater freedom to review it. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). In either case, the ALJ must provide an explanation for her credibility assessment that is sufficient to give the reviewing court a fair sense of how she weighed the claimant's testimony. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

This court finds that the ALJ did not adequately support her credibility determination. The ALJ began her assessment of Solleveld's credibility by finding that her symptoms and complaints are not supported by objective medical findings. (A.R. 47-48.) The ALJ also found that Solleveld "was able to perform competitive work on a sustained basis with impairments she now alleges are totally disabling." (Id. at 47.) But the ALJ did not cite to any evidence to support her conclusion, and the record does not corroborate her finding. Solleveld testified that she worked as a product stocker in 2007 and 2008, but was fired after taking too much time off because of her back pain. (Id. at 16.) She said she worked at a sandwich shop in 2009, but that she quit after a month because she had to take breaks every five to ten minutes. (Id. at 15-16.) Solleveld's work history hardly constitutes "work on a sustained basis." (See id. at 47.) Furthermore, the fact that Solleveld attempted to work does not necessarily mean she is not disabled. "A person can be totally

11

disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, [she] is in fact working." *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005).

The ALJ added that Solleveld was "ambulatory upon arrival" at the emergency room in April 2011, no x-rays were taken, and she was discharged home within an hour. (A.R. 47.) But according to the record from that visit, Solleveld arrived at the hospital "ambulatory via private auto accompanied by [an] immediate family member." (Id. at 306.) This note indicates that she was driven to the hospital and then perhaps walked inside, which is not necessarily inconsistent with her testimony that she can walk about a block before she needs to sit down. (Id. at 20.) Furthermore, it is unclear how a short stay in the emergency room detracts from the credibility of Solleveld's claims. (Id. at 306.) The ALJ did not explain why she believed that someone experiencing back pain consistent with Solleveld's allegations would need to receive care beyond a physical exam and prescriptions for pain medication. Because the ALJ's reference to the ER visit is insufficiently explained, the court is unable to get a fair sense of why she viewed it as inconsistent with Solleveld's complaints of pain.

The ALJ further concluded that Solleveld's testimony was not credible given her "extremely limited treatment record." (Id. at 48.) As an initial matter, a perceived lack of medical evidence supporting the severity of a claimant's symptoms is insufficient, standing alone, to discredit her testimony. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted). More importantly, in finding her

12

treatment record "extremely limited," the ALJ overlooked the fact that Solleveld received consistent treatment from December 2006 through at least May 2011, with progress notes being recorded as often as once a week. (See, e.g., A.R. 239-53.) Although in some cases conservative treatment may contradict the severity of the limitations alleged, here the record shows that Solleveld was prescribed narcotics, including Vicodin and Norco, numerous times over her treatment history. *See Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (contrasting "conservative" treatment like over-the-counter medication with "more aggressive" treatment like prescription narcotics and steroid injections). Here the medical record simply does not support the ALJ's conclusion that Solleveld's treatment record was "extremely limited."

The ALJ's remaining reasons for discrediting Solleveld also fall short. The ALJ notes that Solleveld's April 2011 emergency room visit occurred "around the time [that] she would have received her hearing notice from the Agency." (A.R. 47.) But the ALJ provided no explanation for why the correlation of those two events is relevant to Solleveld's credibility, and any potential meaning behind that timing is speculative at best. The court also cannot discern what the ALJ meant when she wrote that Solleveld and her father "were less than credible or forthcoming about her activities of daily living" during the hearing. (Id. at 48.) It appears from the transcript that Solleveld and her father answered all of the ALJ's questions and that their testimony was responsive. (See id. at 11-37.) If the ALJ noticed something amiss in Solleveld's or her father's demeanor she should have included

her observations in the decision. *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (endorsing the role of observation in determining credibility). But without additional information, the court is left guessing as to why the ALJ believed Solleveld and her father were less than forthcoming.

An erroneous credibility determination mandates a remand "unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014); *see also Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011) (noting that an inadequate credibility determination is "reason enough" to reverse an ALJ's decision). Here, neither of those exceptions prevents remand. Solleveld's testimony is not so contradicted by medical evidence as to be unbelievable, and the ALJ expressly relied on her credibility finding as justification for her decision. (See A.R. 48.) Credibility is especially important in a case like this involving pain-related symptoms which "sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," such that the ALJ "must carefully consider the individual's statements about symptoms with the rest of the relevant evidence." SSR 96-7p, 1996 WL 374186, at *1. Accordingly, this case must be remanded for a new credibility determination.

**B.     Remaining Arguments**

Although the court need not address in detail Solleveld's remaining challenges given the court's conclusion that a remand is necessary, *see Pierce*, 739 F.3d at 1051, the court will address them briefly in the interest of thoroughness.

14

In deciding that Solleveld has the RFC to perform certain kinds of light work, the ALJ gave no weight to the opinions of Dr. Harney and Dr. McVay, Solleveld's treating physicians. (A.R. 48.) The ALJ found the doctors' opinions to be "conclusory in nature" and lacking in evidentiary support, "fail[ing] to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (Id.) The ALJ also faulted their opinions for failing to include "a function by function analysis" and for stating that Solleveld is unable to work, a conclusion reserved for the Commissioner. (Id.) Finally, the ALJ noted that the record contains "persuasive contradictory evidence." (Id.)

Although the ALJ correctly observed that findings about a claimant's ability to work are reserved for the Commissioner, *see* 20 CFR §§ 404.1527(d)(2), 416.927(d)(2), the ALJ is still required to consider all opinions stemming from medical sources, including those on an ultimate issue like whether the claimant is disabled, *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). And even though Drs. Harney and McVay did not include function-by-function assessments in their opinions, the regulations do not require them to do so. *See Pursell v. Colvin*, No. 12 CV 5455, 2013 WL 3354464, at *12 (N.D. Ill. July 3, 2013). Furthermore, there is no indication that the ALJ considered the length, nature, and extent of Solleveld's treatment relationships with her physicians, the frequency of examinations, their specialties, or the types of tests they performed, as required by 20 C.F.R. § 404.1527(c)(2). The ALJ should discuss these factors on remand.

Solleveld next argues that the ALJ failed to consider all of her impairments in the aggregate. (R. 17, Pl.'s Mem. at 7-8.) Specifically, she contends that the ALJ's step-two determination should have included kyphoscoliosis, lumbar spondylosis, and foraminal stenosis in addition to asthma, scoliosis, and degenerative disc disease. (Id.; A.R. 45.) However, an ALJ's failure to account for a severe impairment at step two of the analysis is harmless as long as the ALJ continues to the next step. *See Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). Here, the ALJ proceeded beyond step two and considered Solleveld's severe and non-severe impairments in crafting the RFC, so any error in omitting diagnosed conditions at step two was harmless. *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (noting that ALJ's step-two characterization of a condition as non-severe was "of no consequence with respect to the outcome of the case" where the ALJ recognized other severe impairments and proceeded to the next steps of the evaluation process); *Marino v. Colvin*, No. 12 CV 5721, 2013 WL 6858839, at *10 (N.D. Ill. Dec. 30, 2013).

More persuasive is Solleveld's argument that the ALJ erred in basing her RFC assessment on the fact that there were "minimal objective findings" regarding Solleveld's alleged impairments. (R. 17, Pl.'s Mem. at 7-8; A.R. 47.) Dr. Harney's extensive notes record multiple instances of acute muscle spasms, a herniated disc, neuritis, and sacroiliac joint dysfunction. (See, e.g., id. at 222, 239, 240, 247, 252, 273.) An MRI and x-rays found degenerative endplate spurring, disc space narrowing, disc bulging, lumbar spondylosis, and moderate neuroforaminal

stenosis. (Id. at 225, 261, 295.) The record contains evidence of Solleveld's emergency room visits for pain flareups, (id. at 217, 306, 308), and Dr. McVay's May 2011 letter noted diagnoses of degenerative disc disease, foraminal stenosis, kyphoscoliosis, and lumbar spondylosis, (id. at 317). The ALJ should address these medical findings on remand and explain more fully why she believes they are minimal.

Solleveld also contends, and this court agrees, that the ALJ did not consider the potential adverse side effects of Solleveld's medication as required by SSR 96-7p, 1996 WL 374186. *See also Binion v. Shalala*, 13 F.3d 243, 247 (7th Cir. 1994). Dr. Harney wrote in his October 2010 letter that Solleveld has difficulty sleeping because of her medications and suffers from "a constant state of fatigue." (A.R. 305.) Dr. McVay also noted Solleveld's sleep problems and fatigue. (Id. at 312.) Solleveld testified at the hearing that her medication makes her tired and unable to concentrate, (id. at 15-16), and both she and her father testified that she spends much of her days resting or napping, (id. at 22, 26). Even if the ALJ ultimately decides to discount the opinions of Solleveld's treating physicians and both Solleveld's and her father's testimony, on remand the ALJ should at least address the side effects of Solleveld's medication.

Finally, Solleveld argues that the ALJ failed to consider her testimony that she requires frequent breaks and would often miss work. (R. 17, Pl.'s Mem. at 12.) She contends that according to the VE, these limitations make her unemployable. (Id.) Perhaps the ALJ did not address this portion of Solleveld's testimony because

the ALJ found her to be less than credible. Given that the court is already remanding for further discussion of the ALJ's credibility determination, the ALJ should include in her analysis Solleveld's claims regarding work attendance issues and her inability to stay on task.

## Conclusion

For the foregoing reasons, Solleveld's motion for summary judgment is granted, the Commissioner's is denied, and the case is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**